**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION,**
Plaintiff–Appellant,

v.

**McLEAN TRUCKING COMPANY,**
Defendant–Appellee.

No. 87–3070.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 7, 1987.

Decided Dec. 2, 1987.

---

**399**

Bankruptcy Code provides an automatic stay of the commencement or continuation of judicial proceedings against the debtor except for "an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power." 11 U.S.C. § 362(a)(1) and (b)(4). The question presented by this appeal is whether debtor's bankruptcy foreclosed EEOC from instituting and continuing two lawsuits against the debtor to redress alleged unlawful age and racial discrimination in employment, including the recovery of back wages. The bankruptcy court and the district court ruled that the lawsuits were stayed. We think otherwise. We reverse.

### I.

McLean Trucking Company (McLean) sought liquidation in bankruptcy under Chapter 11 from the bankruptcy court in the Western District of North Carolina in January, 1986. Thereafter, EEOC instituted two suits against McLean. The first was in the Western District of Tennessee, in which EEOC alleged that McLean had violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*, by declining to employ twenty-one persons for management trainee positions because of their age. EEOC sought make-whole relief, including back pay, with interest, liquidated damages, a permanent injunction against future violations and an affirmative action program to remedy the effects of the alleged past and present discrimination.

A second suit was filed in the Northern District of Texas. In this action, EEOC alleged that McLean had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by discharging an employee, Thomas Gosby, because of his race. EEOC prayed an injunction against further violations of Title VII and make-whole relief for Gosby, including back pay, rightful place reinstatement and any other relief necessary to eradicate the effects of the discrimination.[1]

Warren Robert Duplinsky (Charles A. Shanor, General Counsel; Gwendolyn Young Reams, Associate General Counsel; Lorraine C. Davis, Asst. General Counsel, E.E.O.C., on brief), for plaintiff-appellant.

George Carruthers Covington (Joseph B.C. Kluttz; Kennedy, Covington, Lobdell & Hickman; Claude M. Hamrick, on brief), for defendant-appellee.

Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation; WINTER, Chief Judge, and WILKINS, Circuit Judge.

HARRISON L. WINTER, Chief Judge:

Upon the filing of a voluntary or involuntary petition in bankruptcy, § 362 of the

---

**1.** EEOC also petitioned the bankruptcy court to relieve it from the stay to enable it to enforce a consent decree in the Middle District of North Carolina on behalf of 300 class members and to

McLean filed a motion in the bankruptcy court to determine the applicability of 11 U.S.C. § 362 to EEOC's suits in the other courts, and EEOC moved for relief from automatic stay.[2] The bankruptcy court held that the automatic stay of § 362(a) applied and accordingly denied EEOC's motion for relief.[3]

Before summarizing the reasoning of the bankruptcy court, we should recite other facts that the bankruptcy court thought significant in arriving at its opinion. They are that the purpose of the bankruptcy proceeding was to liquidate McLean. Within two weeks of filing its petition, McLean reduced its labor force from approximately 10,000 to fewer than 300.[4] With the exception of the temporary hiring of casual labor to fulfill a specific need, McLean has not engaged in any hiring activity, and since its primary business operations have ceased, McLean has no intention of resuming hiring on a long-term basis.

The bankruptcy court articulated its recognition that the automatic stay provision of § 362 was inapplicable to an action "by a governmental unit to enforce such governmental unit's police or regulatory power,"[5] but it concluded that, because McLean was in liquidation and had suspended its primary business operations, the Texas action was essentially a claim for back wages for Gosby and the Tennessee action a claim for back wages for twenty-one named individuals. Each, it concluded, was nothing more than "an attempt to adjudicate private rights." It therefore ruled that both were automatically stayed by § 362(a). It distinguished cases where other courts had taken a contrary view on the ground that the object of suits filed by EEOC was not merely to obtain money or that EEOC's suit to obtain remedies including the payment of money preceded the filing of a bankruptcy petition. It also distinguished cases arising under the National Labor Relations Act to enforce an order of the Board on the ground that the Board, unlike EEOC, had jurisdiction to give monetary relief and courts must defer to its primary, specialized jurisdiction. Finally, the bank-

---

recover money judgments. The petition was denied and EEOC does not appeal this denial.

**2.** The EEOC is not required to seek relief from stay in bankruptcy court before commencing or continuing an action in exercise of its police or regulatory power. *Cf. NLRB v. Edward Cooper Painting, Inc.,* 804 F.2d 934, 939–41 (6 Cir.1986) (NLRB was not required to petition bankruptcy court for relief from stay before it proceeded with unfair labor practice hearing).

**3.** McLean also filed a Suggestion of Bankruptcy in the district courts in Tennessee and Texas. Initially the Texas court dismissed EEOC's suit, but it later reinstated it. It then stayed the action pending the outcome of the motion in the bankruptcy court. EEOC did not oppose a stay in the Tennessee court pending the outcome of the motions in the bankruptcy court.

**4.** McLean has proferred an affidavit to establish that its work force has now diminished to sixteen.

**5.** The pertinent provisions of § 362 are set forth below:

§ 362. AUTOMATIC STAY

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

. . . . .

(b) The filing of a petition under section 301, 302, or 303 of this title, or of an application under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), does not operate as a stay—

. . . . .

(4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power;

(5) under subsection (a)(2) of this section, of the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ....

ruptcy court pointed out that EEOC could assert the claims for back pay in the bankruptcy court where discovery could be controlled and significant dissipation of the assets of the bankruptcy estate could be prevented.

In affirming the bankruptcy court, the district court filed no separate opinion of its own but stated its agreement with the views expressed by the bankruptcy court.

## II.

The result reached by the bankruptcy court has, as McLean argues, a superficial attractiveness. It would certainly have the effect of protecting McLean from being required to litigate in two or more districts in the large geographical area in which it did business and limiting litigation to one bankruptcy court in one district.[6] There is the countervailing argument that in an appropriate case, the district court in Texas, Tennessee or any other place could transfer the case to the district of McLean's principal operations, presumably the Western District of North Carolina, under 28 U.S.C. § 1404(a). Nonetheless, we are persuaded that the view of the bankruptcy court and the district court cannot prevail. In our view, the language of § 362, its legislative history and the case law require the opposite conclusion.

By its terms, § 362 exempts from the automatic stay a judicial proceeding by a governmental unit "to enforce such governmental unit's police or regulatory power." There can be no doubt that EEOC is a governmental unit. The question is whether the Texas and Tennessee suits were brought to enforce EEOC's "police or regulatory power."

Just what was meant by the language of § 362 is explained in S.Rep. 989, 95th Cong., 2d Sess. 52, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5838.

There, speaking of § 362(b)(4) and (5), the committee said:

Paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws, *or attempting to fix damages for violation of such a law,* the action or proceeding is not stayed under the automatic stay.

Paragraph (5) makes clear that the exception extends to permit an injunction and enforcement of an injunction, and to permit the entry of a money judgment, but does not extend to permit enforcement of a money judgment. Since the assets of the debtor are in the possession and control of the bankruptcy court, and since they constitute a fund out of which all creditors are entitled to share, enforcement by a governmental unit of a money judgment would give it preferential treatment to the detriment of all other creditors.

(emphasis added).[7] To the same effect is H.Rep. 595, 95th Cong., 2d Sess. 343 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6299.

It is true that Representative Don Edwards, who was a member of the group of Representatives and Senators working to resolve differences in the bills which were ultimately enacted as the Bankruptcy Reform Act of 1978 said of § 362(b)(4) that "[t]his section is intended to be given a narrow construction in order to permit governmental units to pursue actions to protect the public health and safety and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." 124 Cong.Rec. H 11,089, *reprinted in* 1978 U.S.

---

**6.** In the actions in Tennessee and Texas, EEOC prayed a jury trial. Even with McLean's agreement, there may be doubt that the bankruptcy court could impanel a jury to try these disputed claims. Of course, the district court could exercise its jurisdiction to try this aspect of the bankruptcy case with a jury.

**7.** Consistent with the language of § 362(b)(5), EEOC concedes that any judgment for back pay which it may obtain in Texas or Tennessee will be collectible only in the bankruptcy proceedings in the Western District of North Carolina.

Code Cong. & Admin.News 6436, 6444–45. McLean relies heavily on this comment in arguing that the Texas and Tennessee actions are not excluded from the automatic stay because they seek pecuniary relief. The case law, however, indicates otherwise.

In *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975), an issue was whether the district court, in a Title VII case, abused its discretion in declining to award back pay after it found racial discrimination in employment. The Court held that, given a finding of unlawful discrimination, back pay should be denied only for reasons that would not frustrate Title VII's purpose of eradicating discrimination and making persons whole for injuries suffered through past discrimination. Significantly for our purposes, the Court, after reciting that the primary purpose of Title VII was to achieve equality of employment opportunities and remove barriers that in the past have favored white employees over other employees, said:

> Backpay has an obvious connection with this purpose. If employers faced only the prospect of an injunctive order, they would have little incentive to shun practices of dubious legality. It is the reasonably certain prospect of a backpay award that "provide[s] the spur or catalyst which causes employers and unions to self-examine and to self-evaluate their employment practices and to endeavor to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in this country's history." *United States v. N.L. Industries, Inc.,* 479 F.2d 354, 379 (CAB 1973).

422 U.S. at 417–18, 95 S.Ct. at 2371–72.

Even more informative on the question before us is the Court's comment in *General Tel. Co. of the Northwest v. EEOC,* 446 U.S. 318, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980), about the 1972 amendments to Title VII that permitted EEOC to sue employers on behalf of employees who were the victims of discrimination:

> The amendments did not transfer all private enforcement to the EEOC and assign to that agency exclusively the task of protecting private interests.... [Other] private action rights suggest that the EEOC is not merely a proxy for the victims of discrimination.... Although the EEOC can secure specific relief, such as hiring or reinstatement, constructive seniority, or damages for backpay or benefits denied, on behalf of discrimination victims, the agency is guided by "the overriding public interest in equal employment opportunity ... asserted through direct Federal enforcement." 118 Cong.Rec. 4941 (1972). *When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination.*

446 U.S. at 326, 100 S.Ct. at 1704 (emphasis added) (footnote omitted). *See also EEOC v. Shell Oil Co.,* 466 U.S. 54, 61–62, 104 S.Ct. 1621, 1627–28, 80 L.Ed.2d 41 (1984) (Congress entrusted to EEOC primary responsibility for Title VII enforcement).

 We have no doubt that when EEOC sues to enjoin violations of Title VII or ADEA and seeks reinstatement of the victims of alleged discrimination and adoption of an affirmative action plan in a Title VII case, and couples these prayers for relief with a claim for back pay, EEOC is suing in exercise of its police or regulatory power and is not subject to the automatic stay until its monetary claims are reduced to judgment. We think also that even if EEOC's non-monetary claims for relief in the Texas and Tennessee cases may be disregarded,[8] *Albemarle Paper* and *General Telephone* teach that EEOC is still proceeding in the exercise of its police or regulatory power when it seeks to recover back pay for the victims of alleged unlawful discrimination so as to be exempt from the automatic stay until its prayer for monetary relief is reduced to judgment. We so hold.

Our conclusion is in accord with that reached by other courts confronted with the same or analogous questions. In

---

**8.** The bankruptcy court thought non-monetary relief moot because McLean is almost effectively liquidated. The Texas and Tennessee federal district courts are now the proper fora in which to determine the propriety of EEOC's non-monetary claims for relief.

*EEOC v. Rath Packing Co.*, 787 F.2d 318, 325–26 (8 Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986), the court permitted EEOC to reduce its claim for injunctive relief and back pay to judgment against a debtor in bankruptcy reasoning on the authority of back pay awards under the National Labor Relations Act that EEOC was proceeding to enforce its police or regulatory powers. Although McLean argues that *Rath* is distinguishable because the debtor was an ongoing business not in liquidation, other courts which have applied *Rath* treat it as a direct holding that EEOC's pursuit of pecuniary relief under Title VII is different from an action for money damages under a law not primarily relating to the public interest. *See EEOC v. Hall's Motor Transit Co.*, 789 F.2d 1011, 1013 (3 Cir.1986) (refusing to apply stay to EEOC Title VII proceedings for reinstatement of employee); *EEOC v. Guerdon Industries*, 76 B.R. 102, 103 (W.D.Ky.1987) (lifting stay on EEOC Title VII action).

We add only that in agreement with the Eighth Circuit we see a direct analogy between a suit by EEOC to recover back pay for a victim of age or racial discrimination and a proceeding before the National Labor Relations Board to effect reinstatement or back pay for the victim of an unfair labor practice. The latter is generally held not subject to the automatic stay. *See e.g., NLRB v. Edward Cooper Painting, Inc.*, 804 F.2d 934 (6 Cir.1986); *NLRB v. Evans Plumbing Co.*, 639 F.2d 291 (5 Cir.1981).[9]

REVERSED.

---

**9.** We recognize that competing public concerns are implicated in this case. As noted above, exemption of EEOC's enforcement actions against McLean from the automatic stay provision of § 362(a) "vindicate[s] the public interest in preventing employment discrimination." General Tel. Co. of the Northwest, 446 U.S. at 326. There also is a substantial public interest, recognized in the bankruptcy laws, in avoiding long delays in the distribution of assets as well as protecting the status of creditors' rights as of the time the debtor files for bankruptcy. *See, e.g., A.H. Robins v. Piccinin*, 788 F.2d 994, 998 (4 Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). EEOC, for undisclosed reasons, waited until after McLean filed for bankruptcy before commencing the suits in Tennessee and Texas, neither of which has gone to trial. Uncertainties, therefore, remain as to the duration of these suits and the results as to damages and the possible preferred status of these potential creditors' judgments. There could be substantial delay of McLean's liquidation. Yet, for the reasons stated above, we feel bound by the explicit language of § 362(b)(4), its legislative history, and the analogy of the NLRB cases cited above. If there is to be a different rule, it should be enacted by Congress.