**In re FIRSTCORP, INC., Debtor.**

**FIRSTCORP, INC., Plaintiff,**

**v.**

**OFFICE OF THRIFT SUPERVISION, Defendant.**

**Bankruptcy No. 90–04107–ATS. Adv. No. S–90–00279–AP.**

United States Bankruptcy Court, E.D. North Carolina.

Dec. 18, 1990.

Lacy H. Reaves, Raleigh, N.C. and David G. Epstein, King & Spalding, Atlanta, Ga., for Firstcorp, Inc.

Harvey A. Levin, Office of Thrift Supervision, Washington, D.C., for OTS.

William B. Sullivan, Winston–Salem, N.C., Attorney for Wachovia Bank Trust Bondholders.

Rudolph A. Renfer, Jr., Raleigh, N.C., Asst. U.S. Atty.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The two matters before the court are the "Motion with Respect to Restraining OTS Action" filed by the chapter 11 debtor, Firstcorp, Inc., on December 7, 1990, and the debtor's "Application for Temporary Restraining Order" filed on December 11, 1990, initiating an adversary proceeding against The Office of Thrift Supervision. A hearing was held in Raleigh, North Carolina, on December 14, 1990.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and the subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151 and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28

U.S.C. §§ 157(b)(2)(A), (G) and (O), which this court may hear and determine.

## FACTS

The facts are not disputed. Firstcorp, Inc. filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on December 5, 1990, and since that time has been a debtor in possession, 11 U.S.C. § 1101(1). Firstcorp is a Delaware corporation authorized to do business in the State of North Carolina as a savings and loan holding company.[1] The debtor owns all of the stock of two savings associations, First Federal Savings and Loan Association of Raleigh and First Federal Savings and Loan Association of Durham.

Firstcorp acquired First Federal of Raleigh in March of 1985. The acquisition was approved by the Federal Home Loan Bank Board, upon application of Firstcorp, through FHLBB Resolution No. 85–219. Included in the resolution was a term requiring Firstcorp "for as long as Firstcorp controls First Federal of Raleigh" to maintain defined capital requirements and to "infuse" additional equity capital if necessary.

Also in 1985 Firstcorp issued convertible subordinated debentures in the principal amount of $15,500,000. Interest on the debentures is payable quarterly and they mature in the year 2005. The offering was a public offering and Wachovia Bank and Trust Company, N.A. is the trustee. Firstcorp lent $13,400,000 of the offering proceeds to First Federal of Raleigh in exchange for First Federal of Raleigh's issuance of unsecured capital notes to Firstcorp. These notes and the stock of First

Federal of Raleigh and First Federal of Durham now constitute substantially all of the assets of the debtor. On June 30 and September 30, 1990, Firstcorp failed to make its required quarterly interest payments on the debentures and Wachovia, as trustee, accelerated the obligation.

In January of 1990 Firstcorp unsuccessfully sought OTS forbearance concerning its obligation to maintain the First Federal of Raleigh capital requirement. OTS directed Firstcorp in writing on several occasions thereafter to infuse sufficient capital into First Federal of Raleigh to meet the capital maintenance obligation, but the infusion has not occurred.

Following extensive negotiations, on November 30 First Federal of Raleigh and OTS entered into a "Consent Agreement" regarding the continued operation of First Federal of Raleigh. Included in the agreement was the acknowledgement by First Federal of Raleigh that it had insufficient capital and that this constituted grounds for the appointment of a conservator or receiver. *See* Consent Agreement at 1. The agreement also included the following provision:

> Nothing in this Agreement, however, shall serve to preclude Firstcorp, the Institution's holding company, from honoring its net worth maintenance obligations pursuant to FHLBB Resolution 85–219, and the Institution's receiving the benefit of such obligations.

Consent Order ¶ III.5(a) at 15.

Later, on November 30, OTS served Firstcorp with a "Notice of Charges and Hearing"[2] and a "Temporary Order to Cease and Desist."[3] The notice, which com-

---

1. A savings and loan association may not be a debtor in bankruptcy, 11 U.S.C. § 109(b)(2) and (d), but there is no such prohibition concerning a holding company which owns a savings and loan association.

2. In general, 12 U.S.C. § 1818(b) authorizes the appropriate federal banking agency to issue a notice of charges and to institute administrative proceedings, including a hearing if requested by the charged party, where the charged party has engaged in, or the agency has reasonable cause to believe that the charged party is about to engage in, an unsafe or unsound practice, or where the charged party has violated, is violat-

ing, or the agency has reasonable cause to believe that the charged party is about to violate, any condition imposed in writing by the agency in connection with the granting of any application or other request by the charged party. *See* OTC Memorandum of Points and Authorities at 3, fn. 2 (Dec. 13, 1990).

3. Section 1818(c) generally permits the appropriate federal banking agency, when it determines that the violation or practice contained in the notice of charges is likely to weaken the condition of the subject depository institution, to issue a temporary order requiring the charged party to cease and desist from any such

menced an administrative proceeding pursuant to 12 U.S.C. § 1818(b), charged Firstcorp with an "unsafe and unsound practice" for failure to comply with "a condition imposed in writing by the OTS in connection with the granting of an application." Notice of Charges, ¶ II at 1 (Nov. 30, 1990). More specifically, the allegation is that Firstcorp failed to fulfill its capital maintenance obligation which amounted to $45,000,000 as of September 30, 1990. Notice, ¶¶ III.A.16 & 17 at 4. Paragraph III.A.5 of the Notice states as follows:

> The acquisition of First of Raleigh by Firstcorp was approved upon the written condition, among others, that for as long as Firstcorp controls First of Raleigh, the regulatory net worth of First of Raleigh would be maintained by Firstcorp at the greater of (1) three percent of total liabilities or (2) a level consistent with that required by the applicable capital requirements ("capital maintenance obligation"). The condition also requires Firstcorp to infuse sufficient additional equity capital, in a form satisfactory to

the OTS, as successor to the Federal Home Loan Bank Board.

Notice, ¶ III.A.5 at 2.

A hearing before an Administrative Law Judge was to be scheduled on or before January 29, 1991. *Id.*, ¶ IV.A.2 at 6.

The Temporary Order to Cease and Desist, which was entered by OTS in conjunction with the Notice, ordered Firstcorp (1) not to directly or indirectly engage in transactions with First Federal of Raleigh or with First Federal of Durham without approval from OTS, (2) to extinguish the capital note from First Federal of Raleigh, (3) not to transfer or pledge its assets without OTS approval (4) to transfer its ownership interest in First Federal of Durham to First Federal of Raleigh, and (5) to use its best efforts to fulfill First Federal of Raleigh's capital requirements.[4]

On December 4 Firstcorp filed a complaint in the United States District Court for the Eastern District of North Carolina seeking to enjoin the OTS action pursuant to 12 U.S.C. § 1818(c)(2),[5] but on the next

---

violation or practice and to take affirmative action to prevent the effect of the violation or practice, pending completion of the administrative proceedings on the notice of charges. *See* OTS Memorandum at 3, fn. 3.

**4.** Specifically, the order provided as follows:
> 1. *Temporary C & D Under FDIA Sections 8(b) and 8(c).*
> (a) Firstcorp shall not directly or indirectly, without the prior written approval of the Southeast Regional Director for the OTS or his designee ("Regional Director"), engage in any transactions with First of Raleigh or First Federal Savings and Loan Association of Durham, North Carolina ("First of Durham"), or any of their wholly owned subsidiaries, except for those transactions expressly set forth in this Order.
> (b) Firstcorp shall immediately, upon receipt of this Order, extinguish and cancel the capital note from First of Raleigh and the accrued interest receivable thereon and return the canceled instruments to First of Raleigh as partial satisfaction of its capital maintenance obligation. Firstcorp shall insure that its corporate secretary, management and accounting staff make the appropriate entries to effect the cancellation of the note and accrued interest on the books and records of both Firstcorp and First of Raleigh.
> (c) Firstcorp shall not transfer, pledge or encumber in any way any of its assets unless

and until it receives written permission to do so from the Regional Director.
> (d) Firstcorp shall immediately transfer all of its ownership interest in First of Durham to the wholly owned subsidiary of First of Raleigh, Sir Walter Management or any other First of Raleigh subsidiary acceptable to the Regional Director, in partial satisfaction of its capital maintenance obligation. Firstcorp shall insure that its corporate secretary, management and accounting staff take all steps necessary to effect the transfer and make the appropriate entries on the books and records of both Firstcorp and First of Raleigh.
> (e) Firstcorp shall use its best efforts to fulfill its remaining capital maintenance obligation and hereafter maintain First of Raleigh's capital at the levels required by 12 C.F.R. Part 567 or any successor capital requirement.

Temporary Order to Cease and Desist, ¶ III.1 at 2–3 (Nov. 30, 1990).

**5.** 12 U.S.C. § 1818(c)(2) provides as follows:
> [w]ithin ten days after the depository institution concerned or any institution-affiliated party has been served with a temporary cease-and-desist order, the depository institution or such party may apply to the United States district court for the judicial district in which the home office of the depository institution is located, or the United States District Court for the District of Columbia, for an injunction

**488**

day, December 5, before the district court ruled on that request, Firstcorp filed its chapter 11 petition. On December 7, 2 days after the filing of Firstcorp's chapter 11 petition, OTS appointed the Resolution Trust Corporation as receiver for First Federal of Raleigh and the assets of First Federal of Raleigh were transferred to a new institution, "First Federal Savings Association of Raleigh," for which RTC serves as the OTS-appointed conservator.

The debtor now seeks a determination by this court that 11 U.S.C. § 362(a) stays the OTS proceeding, including the temporary cease and desist order, and stays the imposition of sanctions and penalties against the debtor and its related parties for their failure to comply with OTS orders, as well as OTS action against First Federal of Durham.

According to the debtor, compliance with the OTS temporary order would effectively divest the debtor of substantially all of its assets and provide OTS with the sole benefit of the assets to the exclusion of all other creditors of the debtor. The debtor contends that the OTS proceeding should be enjoined to preserve the status quo and to preserve the debtor's assets for administration and disposition under the Bankruptcy Code. Furthermore, the debtor submits that the threat of sanctions and penalties impairs the debtor's ability to operate and to retain key employees, and any action by OTS against First Federal of Durham, which is in compliance with the minimum capital requirements established by law, would be in violation of § 525. To the extent that these actions are not protected by the § 362 stay, Firstcorp asks that they be enjoined pursuant to 11 U.S.C. § 105.

OTS on the other hand, seeks dismissal of the debtor's motion and complaint on the grounds that this court lacks jurisdiction to enter a temporary restraining order and

that, even if it did not lack jurisdiction, the OTS proceedings are exempt from the automatic stay provisions by virtue of § 362(b)(4) and (b)(5). OTS contends that 12 U.S.C. § 1818(i)(1) [6] is an absolute bar to this court's interference in the administrative proceeding. Moreover, OTS argues that the debtor has not made the requisite showing to support the requested injunctive relief in that (1) the debtor has failed to state a request for relief on the merits; (2) since the terms of the temporary order can only be enforced by OTS's resort to injunctive relief under 12 U.S.C. § 1818(d), there has been no disturbance of the status quo and the debtor has not suffered nor is it under threat of irreparable harm; and (3) the statutory scheme underlying the OTS proceeding provides the debtor with an adequate remedy at law.

### DISCUSSION AND CONCLUSIONS

The undisputed facts bring into sharp focus the conflict between the bankruptcy law and the federal statutory structure for regulating the savings and loan industry. Which law controls, the bankruptcy law which gives this court exclusive jurisdiction over all of the debtor's property and of property of the estate, 28 U.S.C. § 1334(d), or the regulatory statute which says that no court shall have jurisdiction to enjoin OTS's notice and order, 12 U.S.C. § 1818(i)(1)? Are the actions of OTS stayed by 11 U.S.C. § 362(a)(3), which prohibits any act to obtain possession of property of the estate, or are OTS's actions excepted by the stay under § 362(b)(4) or (5), which permits governmental units to enforce its police or regulatory powers?

The clash between these two bodies of law was recently addressed by the Fifth Circuit Court of Appeals in *MCorp Financial, Inc. v. Board of Governors Federal Reserve System of the U.S.*, 900 F.2d 852

setting aside, limiting, or suspending the enforcement, operation, or effectiveness of such order pending the completion of the administrative proceedings pursuant to the notice of charges served upon the depository institution or such party under paragraph (1) of subsection (b) of this section, and such court shall have jurisdiction to issue such injunction.

**6.** 12 U.S.C. § 1818(i)(1) provides in pertinent part that

except as otherwise provided in this section no court shall have jurisdiction to affect by injunction or otherwise the issuance or enforcement of any notice or order under this section, or to review, modify, suspend, terminate, or set aside any such notice or order.

(5th Cir.1990). In that case involving a bank holding company the district court resolved the conflict in favor of the bankruptcy law, holding that the general bankruptcy process superseded the federal regulation of banking. *In re MCorp*, 101 B.R. 483 (S.D.Tex.1989). The Fifth Circuit court, however, disagreed, stating that the district court's holding that 28 U.S.C. § 1334 superseded 12 U.S.C. § 1818(i) effectively repealed § 1818(i). *MCorp* at 855. Nonetheless, to hold that § 1818(i) supersedes § 1334 would likewise be to repeal § 1334. What is required is for the court to "harmonize" these two statutes. *Id.* at 855. *See Anderson v. F.D.I.C.*, 918 F.2d 1139 (4th Cir.1990) (describing the need to construe conflicting statutes harmoniously).

Clearly, OTS has the responsibility and must have the ability to regulate savings and loan associations. It is equally clear, however, that property of a chapter 11 debtor's bankruptcy estate must be protected so that the assets can be distributed in accordance with the priorities established and recognized by the Bankruptcy Code. The filing of a bankruptcy petition creates a bankruptcy estate. 11 U.S.C. § 541(a). That estate is protected by § 362(a)(3), which prohibits any action, *"whether against the debtor or third parties,* to obtain possession or to exercise control over" property of the estate. *A.H. Robins Co. Inc. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir.1986), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). Unauthorized postpetition transfers of property of the estate may be avoided pursuant to § 549.

OTS maintains that its claim to the debtor's assets by virtue of its regulatory authority is superior to the claims of other creditors. OTS offers no provision of the Bankruptcy Code to support its contention, and its position is vigorously contested by the debtor and by Wachovia as trustee for Firstcorp's bondholders. In any event, the priority of OTS's claim is not now before the court.[7]

In *MCorp* the court found it significant that the bank regulator was not seeking "control over the property" of the debtor. *MCorp* at 856. The inference to be drawn from that observation is that a regulatory agency may proceed pursuant to its regulatory or police power pursuant to the § 362(b) exception to the automatic stay, but there is a point where that action involves property of the estate, at which point the action may no longer proceed. But, where is the line to be drawn? The Court of Appeals for the Fourth Circuit in an action brought by the Equal Employment Opportunity Commission against a chapter 11 debtor in possession drew the line at the point at which the action became a judgment for a monetary claim. *EEOC v. McLean Trucking Co.*, 834 F.2d 398, 402 (4th Cir.1987).

OTS contends that it is not seeking a monetary judgment, but merely attempting to enforce by affirmative injunction Firstcorp's obligation to maintain First Federal of Raleigh's minimum capital levels. A mandatory injunction may, however, be tantamount to the enforcement of a monetary claim. For example, in *Ohio v. Kovacs*, 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985), the Supreme Court held that an affirmative injunction by the State of Ohio to compel a debtor to clean up a hazardous waste disposal site was in effect a claim by the state for a monetary obligation, and that the claim was dischargeable. In that case a receiver had taken control of the hazardous waste site and, consequently, the debtor could not actually remove the waste from the property. The only way the debtor could perform was by paying money or transferring his financial resources. *Kovacs*, 105 S.Ct. at 710.

◼ Firstcorp is in a similar situation. It no longer controls First Federal of Raleigh, as that institution was seized by OTS and is being run by RTC. Firstcorp may not improve First Federal of Raleigh's capital ratio except by paying money or transferring Firstcorp's assets. Those assets, however, are protected against claims for

---

**7.** Counsel for OTS maintains that the real issue in this case is whether the taxpayers or the

bondholders will take the loss. That issue, however, is left for another day.

monetary obligations by § 362(a)(3). *Piccinin*, 788 F.2d at 1001; *McLean*, 834 F.2d at 402.[8]

The temporary cease and desist order requires Firstcorp not to engage in transactions with First Federal of Raleigh and First Federal of Durham. That part of the order relating to First Federal of Raleigh is no longer needed, since control of that savings association is in the hands of RTC. Firstcorp's relationship with First Federal of Durham will be addressed later in this opinion.

■ The provisions of the temporary cease and desist order which direct Firstcorp to cancel the capital note, to transfer the stock of First Federal of Durham to First Federal of Raleigh, and to fulfill First Federal of Raleigh's capital requirements involve the transfer of assets of the estate and are therefore stayed by § 362(a)(3) and may not be enforced by OTS against Firstcorp or against Firstcorp's officers and employees. That part of the order which prohibits Firstcorp from transferring or pledging its assets without OTS's approval is superseded by 28 U.S.C. § 1334(d), which gives this court exclusive jurisdiction over assets of the debtor's estate.

■ The administrative proceeding initiated by the Notice charges Firstcorp with unsafe and unsound practices, but essentially the complaint is that Firstcorp did not infuse capital to maintain First Federal of Raleigh's minimum capital requirement. Firstcorp may only meet that obligation by expending assets of the estate and, as previously discussed, OTS's attempts to satisfy its monetary claim from assets of the estate are stayed by § 362(a)(3).

OTS argues, however, that the administrative proceeding should continue for the purpose of establishing the extent and validity of the monetary claim. Firstcorp denies that OTS has a claim and contends that the matter should be decided by the bankruptcy court.

The Fourth Circuit in *McLean* held that the lawsuits brought by EEOC in two different district courts could proceed to judgment, but that collection of the judgment would be stayed. 834 F.2d at 402. In *McLean*, however, the lawsuits involved more than just a monetary claim for back wages. In addition to the pecuniary award, the EEOC lawsuits sought to establish the wrongful discrimination by the debtor and to vindicate the fired employees. In the present case, there is no allegation of impropriety on the part of Firstcorp, and all that is involved is a monetary claim, the collection of which is stayed. One of the bankruptcy court's primary functions is to resolve disputes involving claims against the debtor's estate, and there is no compelling reason why the claim at issue should not be resolved in this court. Accordingly, the court concludes that the administrative proceeding is stayed pursuant to § 362(a)(3).

The only remaining matter is OTS's control of First Federal of Durham. That entity is apparently in compliance with its capital requirements, but the temporary cease and desist order prohibits Firstcorp from engaging in transactions with First Federal of Durham without OTS approval.

Firstcorp suggests in its motion that any action by OTS against First Federal of Durham taken as a result of the filing of this case would violate the provisions of 11 U.S.C. § 525, and requests that the court stay any action on the part of OTS against First Federal of Durham as a result of the filing of this case. That issue was not sufficiently addressed at the hearing, and the information before the court is inadequate for the court to act on the debtor's request. Section 525 of the Bankruptcy Code prevents discrimination by governmental units in specified circumstances and requires no interpretation or amplification by this court.

First Federal of Durham, of course, is not a debtor, is not protected by § 362(a), and is subject to the regulatory authority

---

**8.** OTS contends that § 362(a) does not apply to it because OTS is proceeding only as a regulatory agency and is not a creditor. The stay, however, applies to all *entities,* not just creditors.

of OTS. *See In re Peoples Bankshares, Ltd.*, 68 B.R. 536 (Bankr.N.D. Iowa 1986); *In re Deltacorp, Inc.*, 111 B.R. 419 (Bankr. S.D.N.Y.1990).

In summary, the court has attempted to harmonize the conflict between 28 U.S.C. § 1334(d) and 12 U.S.C. § 1818(i) and between § 362(a)(3) and §§ 362(b)(4) and (5) by determining that OTS may continue to exercise its regulatory powers over the debtor and its subsidiaries, but may not disturb the assets of the debtor's estate in pursuit of a monetary claim. When OTS seized control of Firstcorp's wholly owned subsidiary, First Federal of Raleigh, it did not violate the stay. Furthermore, so long as OTS does not violate 11 U.S.C. § 525, it may exercise its full powers to regulate First Federal of Durham. The administrative proceeding, however, is essentially an action to collect a monetary claim against Firstcorp and is stayed in its entirety by § 362(a)(3). Similarly, enforcement of the temporary cease and desist order is stayed except with respect to those provisions which relate to OTS's regulation of First Federal of Durham. Since the court has determined that § 362(a) applies, it is not necessary for the court to address the request for an injunction under § 105.[9]

SO ORDERED.

9. The court also need not address whether 1818(i) precludes it from issuing an injunction because an injunction is not needed; § 362(a) itself imposes the stay.