**In re MOHAWK GREENFIELD MOTEL CORPORATION,**
Debtor.

**Bankruptcy No. 98–44133–HJB.**

United States Bankruptcy Court,
D. Massachusetts.

Aug. 31, 1999.

Paul R. Salvage, Bacon & Wilson, Springfield, MA, for Mohawk Greenfield Motel Corporation.

Laura A. Kolaitis, Rockland, MA, for Stetson Management Co.

Jerrold Lavinsky, Springfield, MA, for Massachusetts Commission Against Discrimination.

## MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

This matter is before the Court pursuant to a motion by Stetson Management Company, Inc. ("Stetson") seeking relief from the automatic stay under § 362(a) and this Court's order of February 4, 1999 that the Massachusetts Commission Against Discrimination ("MCAD") and its Hearing Officer Judith Kaplan ("Kaplan") show cause why they did not violate 11 U.S.C. § 362(a) by entering a postpetition judgment against Mohawk Greenfield Motel Córporation ("Mohawk" or the "Debtor") in proceedings pending before the MCAD.

### I. *Facts*

The relevant facts are not in dispute.

Mohawk is a Massachusetts corporation operating a motor lodge and restaurant in Greenfield, Massachusetts under a franchise agreement with Howard Johnson®. On June 2, 1998, Mohawk filed a petition for relief in this court under Chapter 11 of the Bankruptcy Code. To date, Mohawk has continued to operate and manage its business as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107 and 1108.

Prior to March 8, 1998, Stetson, a Massachusetts corporation and wholly owned subsidiary of Franchise Associates, Inc. ("Franchise"), served as the management company responsible for operating the Debtor's business.[1] Stetson's now expired management contract contained language pursuant to which the Debtor was obligated to indemnify Stetson from certain claims and the defense costs associated therewith.[2]

---

1. Stetson was appointed as manager of the Debtor's operations pursuant to the Third Joint Chapter 11 Plan of Reorganization confirmed in Debtor's prior bankruptcy case, 91–40772–JFQ, on February 19, 1992.

2. That language provides in relevant part:

In taking any action pursuant to this Agreement, [Stetson] will be acting solely as agent for [Debtor], and all debts and liabilities incurred by [Stetson] in the course of its operation hereunder shall be the debts and liabilities of the [Debtor] only. [Stetson] shall not be liable for such debts or liabilities[.]

[Debtor] agrees to reimburse [Stetson], upon demand for any money which [Stetson] is required to pay out for any reason whatsoever, whether the payment is for operating or maintenance expenses or expenses in defense of any claim, civil or

As of the commencement of the bankruptcy case, Stetson, Franchise and the Debtor were named as Respondents (collectively, the "Respondents") in two proceedings pending before the MCAD. The first proceeding was brought on or about August 24, 1993 by a Virginia Grybko ("Grybko"), a former employee who alleged, among other things, that her employment with the Debtor had been improperly terminated on account of age discrimination by one of the general managers of the motor lodge and restaurant. The second proceeding was brought on or about April 4, 1994 by a Laurie Mayhew ("Mayhew"), another former employee who alleged, among other things, that her employment had been terminated due to sexual discrimination and/or sexual harassment by another general manager at the motor lodge.

Hearings were conducted in Grybko's and Mayhew's cases by MCAD Commissioner Douglas Schwarz and Kaplan, respectively, prior to the Debtor's bankruptcy filing. The MCAD decision in each case was still under advisement when the Debtor filed its petition on June 2, 1998. Suggestions of Bankruptcy were filed on or about June 9, 1998 in both of the cases.

On January 6, 1999, Stetson sought relief from the automatic stay (the "Stay Motion"), in order to allow the MCAD to proceed to judgment in both cases. Stetson argued that because its management contract with the Debtor indemnified Stetson for all judgments and attorneys fees incurred in defending any actions brought against the Debtor, the MCAD judgments, if any, would liquidate Stetson's indemnification claim in the Debtor's bankruptcy case. Further, the issuance of those judgments would promote judicial economy since the matters had already been tried before the MCAD and were just waiting final decision.

The Debtor objected to Stetson's Stay Motion, but appeared to take greater issue with Stetson's claimed right of indemnification than with Stetson's request for relief from the automatic stay. According to counsel for the Debtor, Franchise undertook the defense of both the Grybko and Mayhew complaints without advising the Debtor of the existence of either of those proceedings.[3] Having now been advised of the pending MCAD actions, the Debtor argued that Stetson's claims of indemnification were groundless, in that the alleged acts committed by the general managers in each case, even if true, constituted willful and grossly negligent torts outside the scope of their employment with Franchise and Stetson and therefore outside of the scope of Debtor's indemnification obligation.

A hearing on the Stay Motion was scheduled for February 4, 1999. However, prior thereto, on January 19, 1999, Kaplan issued her decision in the Mayhew case. Kaplan found that Mayhew had been the victim of sexual harassment and ordered the Respondents to cease and desist such discriminatory acts. Kaplan further ordered the Respondents to pay to Mayhew damages in the sum of $50,000 (plus interest) on account of her emotional injuries and $7,521.76 (plus interest) on account of her lost wages. Immediately thereafter, Stetson filed the instant amended motion requesting that relief from the automatic stay be granted *nunc pro tunc* to June 2,

criminal action, proceeding, charge, or prosecution made, instituted or maintained against [Stetson][.]

[Debtor] agrees to defend promptly and diligently, at [Debtor's] expense, any claim, action or proceeding brought against [Stetson] ... arising out of or connected with any of the foregoing and to hold harmless and fully indemnify [Stetson] from any judgment, award, fine, penalty, loss or settlement on account thereof.

It is expressly understood and agreed that the foregoing provisions of this paragraph shall survive the termination of this Agreement.

Management Contract at ¶ 14.

3. The Debtor also asserts that the only party named as respondent in the Grybko case is Franchise.

**4**

1998, the date of the commencement of the bankruptcy case (the "Amended Stay Motion"). The Court scheduled the Amended Stay Motion for February 4, 1999 as well.

At the February 4, 1999 hearing, counsel for Stetson requested that this Court grant relief from the stay *nunc pro tunc* to validate the MCAD judgment. Stetson asserted that the granting of such relief was mandated by equitable considerations; namely that the Mayhew case had been fully tried and taken under advisement prepetition, the MCAD was the appropriate administrative agency to hear discrimination cases, and retrying the case would force the Debtor to incur additional fees and expenses.

This Court, however, was hesitant, in light of *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975–77 (1st Cir.1997), to find that the facts in this case favored such relief. It appeared from the record that Kaplan and the MCAD were informed that the Debtor had filed a bankruptcy case and knowingly disregarded the stay provisions of the Bankruptcy Code. The Court explained that it would not grant relief *post facto* where the automatic stay had been intentionally violated; and, therefore, it would not render a decision on Stetson's Amended Stay Motion until it understood why Kaplan decided to enter judgment notwithstanding the filing with the MCAD of a Suggestion of Bankruptcy. Because no representative of the MCAD appeared at the hearing, the Court continued the hearing on the Amended Stay Motion to February 10, 1999 and "ordered the MCAD and Kaplan to appear . . . and show cause why they should not be found to have violated 11 U.S.C. § 362(a) and correspondingly sanctioned" (the "Show Cause Order").

On February 10, 1999, Jerrold Lavinsky ("Lavinsky"), Deputy General Counsel for the MCAD appeared at the continued hearing.[4] According to Lavinsky, Kaplan had not intended to violate the automatic stay. In fact, he explained that it was the understanding of both Kaplan and the MCAD generally that the actions of the MCAD were excepted from the stay. According to Lavinsky, the MCAD had acted as a governmental unit enforcing its police and regulatory power under state law, and its actions fell squarely within the automatic stay exceptions of §§ 362(b)(4) and (5).

The Court expressed its concern that part of the judgment entered by Kaplan appeared to have been rendered solely for the pecuniary benefit of Ms. Mayhew and therefore might not be excepted from the stay. The precise issue was whether MCAD monetary awards to victims of discrimination are excepted from the automatic stay by § 362(b)(4). Appearing to be an question of first impression in this District, the Court took the issue under advisement, after providing the parties an opportunity to file post-hearing briefs.[5]

II.  *Position of the Parties*

The MCAD argues that its proceedings and judgment on Mayhew's behalf were excepted from the automatic stay, pursuant to § 362(b)(4) and (5). According to the MCAD, its actions are motivated by an overriding public interest in preventing and eliminating unlawful discrimination in the Commonwealth, rather than by any pecuniary interest of the government or a complaining party. The MCAD contends that it is free to continue administrative proceedings to determine the appropriate remedy for any violation of the Commonwealth's anti-discrimination laws. Its actions are merely an attempt to fix the amount of the damages for the violation, rather than an effort to enforce a money

**4.** At Kaplan's written request, the Court excused her appearance at the hearing.

**5.** Neither counsel for the Debtor nor counsel for Stetson appeared at the hearing on February 10, 1999. It was later learned that both parties understood the hearing to be continued to another date. To preserve their respective rights to comment on the issue at hand, the Court provided each party an opportunity to file a post-hearing brief. Only the Debtor did so.

judgment on behalf of victims of discrimination. As a result, the MCAD contends that the judgment entered by Officer Kaplan did not amount to a violation of the automatic stay under § 362(a).

In contrast, the Debtor asserts that the MCAD violated the automatic stay when it entered a postpetition judgment against the Debtor with knowledge of the pending bankruptcy case. The Debtor maintains that the MCAD action was not excepted from the automatic stay under § 362(b)(4) and (5), because the primary purpose of the MCAD proceeding was to adjudicate Mayhew's private rights and monetarily compensate her for perceived losses. Alternatively, the Debtor argues that even if the Court finds that the purpose of the MCAD's proceeding was to enforce its regulatory power, the exception under § 362(b)(4) is limited by § 362(b)(5) to the enforcement of only nonmonetary judgments; and the judgment entered by Kaplan was clearly a money judgment subject to the stay. Therefore the Debtor asks that this Court find the actions of the MCAD in violation of § 362(a).

## III. *Discussion*

### A. Section 362(b)(4)

■ Section 362 of the Bankruptcy Code provides that filing a bankruptcy petition operates as an automatic stay of "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor . . ." 11 U.S.C. § 362(a)(1). The stay is designed to preserve the status quo by precluding and nullifying postpetition judicial or non-judicial actions against the debtor and property of the estate in nonbankruptcy forums. *ICC v. Holmes Transp., Inc.*, 931 F.2d 984, 987 (1st Cir.1991). While giving the debtor some breathing room, the automatic stay also ensures that the assets of a debtor are not reduced or disturbed and protects the bankruptcy court's exclusive jurisdiction over the debtor and its property. *Soares*, 107 F.3d at 975; *United States v. Jones & Laughlin Steel Corp.*, 804 F.2d 348, 350 (6th Cir.1986) (citing *Atlantic Richfield Co. v. Good Hope Refineries, Inc.*, 604 F.2d 865, 868–69 (5th Cir. 1979)).

■ Notwithstanding the breadth of the automatic stay, enforcement of a governmental unit's police or regulatory power is excepted. 11 U.S.C. § 362(b)(4) (1998).[6] This exception ensures that the bankruptcy system does not become a haven for "debtors improperly seeking refuge under the stay in an effort to frus-

---

6. As part of the Chemical Weapons Convention Implementation Act of 1998 which was part of the Omnibus Consolidated Emergency Supplemental Appropriation Act, 1999, former Code §§ 362(b)(4) and (5) were combined into new Code § 362(b)(4). The new section excludes:

[from] paragraph (1), (2), (3), or (6) of [§ 362(a) ] . . . the commencement or continuation of an action or proceeding by a governmental unit or any organization exercising authority under the Convention on the Prohibition of the Development, Production, Stockpiling and Use of Chemical Weapons and their Destruction, opened for signature on January 13, 1993, to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to en-

force such governmental unit's or organization's police or regulatory power.
11 U.S.C. § 362(b)(4) (1999). The new Code section makes two explicit changes. First, organizations exercising authority under the Chemical Weapons Convention are now entitled to the benefits of the exception. Second, the exception is extended to §§ 362(a)(1), (2), (3) and (6). Previously, former § 362(b)(4) only excepted actions stayed under § 362(a)(1); and § 362(b)(5) only excepted actions under § 362(a)(2). *See* 2 *Norton Bankruptcy Law and Practice 2d* § 36.18 (1999) (supplement).

Because this case was filed prior to the effective date of the amendment, the former §§ 362(b)(4) and (5) would appear to apply. Regardless, commentators agree that given the lack of significant departure from the former Code sections, the case law that developed under former §§ 362(b)(4) and (5) remains as viable guidance in interpreting this

trate necessary government functions." *United States v. Nicolet*, 857 F.2d 202, 207 (3d Cir.1988). Nonetheless, even in this protected context, enforcement of a money judgment by a governmental unit is precluded. Simply put, action by a governmental unit to enforce its police and regulatory powers is excepted from the automatic stay so long as the action is not to enforce a money judgment.

Because the Bankruptcy Code does not define the term "police or regulatory power," courts have looked to the legislative history of § 362(b)(4) for guidance. The House report issued coincident with the 1978 Reform Act states:

> paragraph (4) excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud; environmental protection, consumer protection, safety or similar police or regulatory laws or attempting to fix damages for violation of such law, the action or proceeding is not stayed under the automatic stay.

H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 343 (1977); S.Rep. No. 95-989, 95th Cong., 2d Sess. 51–52, reprinted in 1978 U.S.C.C.A.N. 5787, 5838, 5963, 6299. But Statements of Representative Edwards and Senator DeConcini make clear that § 362(b)(4) was "intended to be given a narrow construction ... and not to apply to actions by a governmental unit to protect a pecuniary interest in property of the debtor or property of the estate." P.L. 95–598, 1978 U.S.C.C.A.N. 5787, 6444–45, 6513.

Courts have fashioned two tests to determine whether a state agency's administrative actions fall within the scope of § 362(b)(4): "the pecuniary purpose" test and the "public policy" test. *Word v. Commerce Oil Co. (In re Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir.1988). The pecuniary purpose test focuses on whether the governmental action relates primarily to the protection of the government's pecuniary interest in the debtor's property or to matters of public safety and welfare. *In re Dunbar*, 235 B.R. 465 (9th Cir. BAP 1999); *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 128 F.3d 1294, 1297 (9th Cir.1997) (citing *NLRB v. Continental Hagen Corp.* 932 F.2d 828, 833 (9th Cir. 1991)). The public policy test "distinguishes between proceedings that effectuate public policy and those that adjudicate private rights: only the former are exempted from the automatic stay." *Herr v. State of Maine (In re Herr)*, 28 B.R. 465, 468 (Bankr.D.Me.1983).

The MCAD argues that its actions clearly meets both tests. First, the MCAD argues that state and federal civil rights enforcement agencies labor to prevent and eliminate unlawful discrimination, rather than to promote the pecuniary interest of the government or the complaining parties. *See EEOC v. McLean Trucking Co.*, 834 F.2d 398 (4th Cir.1987); *EEOC v. Kimberly–Clark Corp.*, 511 F.2d 1352 (6th Cir.1975); *EEOC v. Sambo's Restaurants, Inc.*, 1982 WL 207 (S.D.Tex.1982). The MCAD maintains that, in this case, the judgment issued by the MCAD ordering the Debtor to compensate Mayhew for back wages and emotional distress was merely a means by which the MCAD enforced the Commonwealth's anti-discrimination laws. The MCAD asserts that its administrative hearings are not a forum where parties adjudicate their private disputes, but is the exclusive means to protect the public interest in preventing employment discrimination. Therefore, the MCAD contends that under either the pe-

new provision. *2 Norton Bankruptcy Law and Practice 2d* § 36.18 (1999) (supplement); *3 Collier on Bankruptcy* ¶ 362.05[5][b] (16th ed.1999). *See also In re Dunbar*, 235 B.R. 465, 469 (9th Cir. BAP 1999) (relying on prior case law to interpret new section 362(b)(4)). With respect to the issues now before this Court, the result under the former Code sections or the present Code sections would be the same.

cuniary purpose or the public policy test its actions are excepted from the automatic stay by § 362(b)(4).

■ This Court finds merit in the arguments set forth by the MCAD. In Massachusetts, a strongly felt public policy against discrimination—based on race, color, religious creed, national origin, ancestry, age, sex, sexual orientation, veteran or military status, handicap, children, or receipt of public assistance—is protected by a legislative scheme which provides for administrative remedies effectuated by the MCAD. *See generally* Mass.Gen.Laws Ann. Ch. 151B § 3. The MCAD is empowered to receive, initiate, and investigate complaints, conduct public hearings, issue orders to eliminate discrimination where it is found to exist, and mitigate the effects of such discrimination. *Id.* Given the purpose of the MCAD and the enforcement powers it has been granted by the Commonwealth, it is clear that the MCAD is a governmental unit [7] enforcing police and regulatory powers within the meaning of § 362(b)(4) of the Bankruptcy Code.

■ However, that is not the end of this Court's review. "Section 362(b)(4) does not immunize any and all official agency actions, but only those 'to enforce such governmental unit's police and regulatory powers.'" *Wengert Transp., Inc. v. Crouse Cartage Co. (In re Wengert Transp., Inc.)*, 59 B.R. 226, 229 (Bankr. N.D.Iowa 1986); *see also Herr*, 28 B.R. at 467 (every proceeding before a governmental unit is not an enforcement of police power within § 362(b)(4); such a construction would render § 362(a)(1) meaningless); *In re Christensen*, 167 B.R. 213, 216 (D.Or.1994) (virtually any action taken by a government agency or public official is in the public interest, but the exception under § 362(b)(4) is not that broad). "In order to fall within the exception [of

§ 362(b)(4)] the primary purpose of the state proceeding **must be** the conservation of public safety, health, or welfare." *In re Thane Dev. Assocs. L.P.*, 143 B.R. 310, 311 (Bankr.D.Mass.1992) (emphasis added).

■ A number of courts agree that a governmental unit, as a legitimate aid to its police power, may move to obtain the issuance of an injunction and recovery of civil penalties against a debtor to punish past and prevent future wrongs. *In re Charter First Mortgage, Inc.*, 42 B.R. 380, 384 (Bankr.D.Or.1984) (citing cases). But these courts explain that when a governmental unit seeks to go beyond the abatement of the prohibited or regulated activity and seeks monetary sanctions or the enforcement of a prepetition obligation of a debtor, its actions are not excepted from the automatic stay. *In re Massenzio*, 121 B.R. 688, 691 (Bankr.N.D.N.Y.1990); *see also In re Dunbar*, 235 B.R. 465 (9th Cir. BAP 1999) (to the extent the state agency instituted proceeding to seek restitution for individual harmed by debtor's actions in violation of state law, such action was not excepted under § 362(b)(4) from the automatic stay); *Poule v. Registrar of Contractors (In re Poule)*, 91 B.R. 83 (9th Cir. BAP 1988) (administrative proceedings against debtor for penalties due for violation of state law had legitimate public safety purpose, but order to reimburse customer harmed by debtor's action was an adjudication of private rights not excepted under 362(b)(4)); In re Paul A. Nelson, P.A., 203 B.R. 756 (Bankr. M.D.Fla.1996) (restitution cannot be assessed postpetition against either the debtor or the debtor's estate for injuries committed by the debtor prepetition); *Christensen*, 167 B.R. at 216 (§ 362(b)(4) did not apply to order by state board requiring debtor to pay restitution to customer injured by debtor's actions); *Fin-*

---

7. A governmental unit is defined under the Bankruptcy Code as "United States; State; Commonwealth; District, Territory; municipality; foreign state; department, agency, or instrumentality of the United States … a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government[.]" 11 U.S.C. § 101(27).

frock v. Interco, Inc. (Matter of Interco, Inc.), 153 B.R. 858 (Bankr.E.D.Mo.1993) (§ 362(b)(4) exception to automatic stay did not apply to allow debtor's former employee to proceed with handicap discrimination suit for reinstatement of position, back wages, medical expenses, and emotional injury before state commission because proceeding was essentially an enforcement of private rights); In re Liss, 59 B.R. 556, 561 (Bankr.N.D.Ill.1986) (injunction, civil penalties, and costs may be sought by governmental unit under § 362(b)(4), but restitution to obtain financial redress for certain people may not).

Other courts disagree, ruling that the ability to grant back pay awards and restitution is simply a means to enforce a governmental unit's police and regulatory power. In EEOC v. McLean Trucking, Co., 834 F.2d 398, 401 (4th Cir.1987), the Equal Employment Opportunity Commission ("EEOC") instituted two postpetition actions against a debtor seeking to redress alleged unlawful age and racial discrimination in its employment practices, and sought an award of back wages. The bankruptcy court ruled that the suits were stayed because, inter alia, the actions were merely an attempt to adjudicate private rights. The district court affirmed. But the Fourth Circuit Court of Appeals reversed, holding that when a governmental unit like the EEOC acts, "albeit at the behest of and for specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." McLean, 834 F.2d at 402 (quoting General Tel. Co. of the Northwest v. EEOC, 446 U.S. 318, 326, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). As a result, the court held that when the EEOC sues to enjoin violations of anti-discrimination laws and also seeks back pay awards, the EEOC acts in exercise of its police and regulatory power and is not subject to the automatic stay until after its monetary claims are reduced to judgment. McLean, 834 F.2d at 402.

Other courts of appeals have similarly held that suits commenced by the EEOC or the National Labor Relations Board ("NLRB") seeking restitution and/or back pay orders are excepted from the automatic stay under § 362(b)(4). See NLRB v. Continental Hagen Corp., 932 F.2d 828 (9th Cir.1991) (the automatic stay did not preclude the entry of a NLRB back pay order, but NLRB sought only to enter its order, not enforce it); In re Carib–Inn of San Juan Corp., 905 F.2d 561 (1st Cir. 1990) (the automatic stay did not preclude the enforcement of a NLRB back pay order, but case distinguishable because the order was entered against debtor's s successor-in-interest); EEOC v. Rath Packing Co., 787 F.2d 318 (8th Cir.) cert. denied, 479 U.S. 910, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986) (the automatic stay did not bar the EEOC from maintaining suit for the entry of a money judgment for back pay); NLRB v. Edward Cooper Painting, Inc., 804 F.2d 934 (6th Cir.1986) (the automatic stay did not preclude the enforcement of a NLRB back pay order); Ahrens Aircraft, Inc. v. NLRB, 703 F.2d 23 (1st Cir.1983) (the automatic stay did not preclude the enforcement of an NLRB back pay order); see also Brock v. Arlmont Servs., Inc., 67 B.R. 111 (D.Mass. 1986) (action by Department of Labor for injunction against continued violation of Fair Labor Standards Act and payment for back wages for employees was excepted by the automatic stay under § 362(b)(4)).

The Court of Appeals for the First Circuit has not specifically determined whether an MCAD monetary award is excepted from the automatic stay under § 362(b)(4). However, the decisions of the various courts of appeal permitting the entry of monetary awards at the behest of the EEOC and the NLRB, and particularly the aforesaid decisions by the First Circuit applying § 362(b)(4) to NLRB back pay awards, reflect an unmistakable similarity to the issues raised here, a conspicuous trend toward the allowance of such awards postpetition and a clear recognition that back pay awards are a necessary method-

ology to serve the public purpose envisioned by the underlying statutes.

The case at bar is an excellent case in point. The MCAD ordered the Debtor to cease and desist acts of sexual discrimination and awarded the complainant, Ms. Mayhew, back wages and compensation for her emotional injuries. Clearly, the MCAD cease and desist order enjoining the Debtor from violation of state law had a legitimate public purpose. But the order enjoining future discriminatory acts would have been largely toothless, without the imposition of an appropriate remedy to ensure future compliance. True, the entry of the award on Ms. Mayhew's behalf was of benefit to her. But that was not the only benefit. The award ensured that the Debtor, as well as others who might contemplate similar odious behavior, would be dissuaded from its future practice.

The message that discriminatory behavior will be identified and remediation determined without excessive delay is the most effective tool of a governmental unit charged with the obligation to ensure private rights for the public good. Regardless of whether this Court applies the pecuniary purpose test or the public policy test, the result is the same. The preservation of MCAD's authority to determine damages on account of discriminatory acts is consistent with public policy and the protection of public safety and welfare; and the benefit to the public arising from the continuing capability of MCAD to identify and sanction discriminatory behavior overshadows any associated pecuniary benefit to the victim of that discrimination.

In view of the foregoing, this Court will follow what it discerns to be the trend among the courts of appeal, both in this circuit and others, to the effect that the entry of awards by administrative agencies like the MCAD fall within the police and regulatory power of these governmental units, pursuant to § 362(b)(4).[8] This Court holds that § 362(b)(4) excepts from the automatic stay the entry by the MCAD of monetary judgments under M.G.L. Ch. 151B.

Inasmuch as the automatic stay is inapplicable, the Amended Stay Motion will be denied as moot. And this Court will take no further action on its Show Cause Order.

---

8. In its papers, the MCAD concedes that the automatic stay **would** apply to any effort to **enforce** an award by seeking to reach property of the estate. Therefore, this Court's holding that the MCAD proceedings are excepted from the automatic stay extends to proceedings up to and including the entry of the MCAD judgment, but no further. Also, as is discussed in the *Carib–Inn of San Juan Corporations* case, the First Circuit has distinguished the applicability of the "automatic" stay from a court's power to issue a "discretionary" stay in appropriate circumstances. *Carib–Inn* at 562. But no party herein has asked this Court to issue a discretionary stay, nor would any such request likely have merit here in light of the history and stage of the MCAD proceedings with respect to Ms. Mayhew's complaint.