In re PAUL A. NELSON, P.A., Debtor.

Bankruptcy No. 95–4614–8G7.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 22, 1996.

758

Tracy K. Strickland, Trustee, St. Petersburg, FL.

V. John Brook, Jr., Chapter 7 Trustee, St. Petersburg, FL.

Robert A. Shimberg, Asst. State Attorney, Tampa, FL, for Hillsborough County.

Joseph D. Magri, Tampa, FL, for Merkle & Magri, P.A.

David B. McEwen, St. Petersburg, FL, for Brook as trustee.

## ORDER ON "EMERGENCY MOTION TO HAVE COURT DETERMINE WHERE FUNDS SHOULD BE PAID"

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came on for hearing on the "Emergency Motion to Have Court Determine Where Funds Should be Paid" filed by Merkle & Magri, P.A. Merkle & Magri, P.A. seeks the entry of an order directing where and to whom to send attorney's fees that are due pursuant to an agreement for division of a legal fee. Merkle & Magri, P.A. is currently holding the fee in an escrow account pending an order from this Court. Present at the hearing were Joseph D. Magri, representing Merkle & Magri, P.A.; Traci K. Strickland, the Chapter 7 trustee in the case of Paul A. Nelson, P.A.; V. John Brook, Jr., the Chapter 7 trustee in the case of Paul A. Nelson; David B. McEwen, representing Brook as trustee; Robert A. Shimberg, Assistant State Attorney for Hillsborough County; and Joan Nelson, the wife of Paul A. Nelson. Paul A. Nelson received notice of the hearing, but did not attend because he is incarcerated, and he is not represented by an attorney. In this order, Merkle & Magri, P.A. will be referred to as "M & M", Paul A. Nelson as "Nelson", Paul A. Nelson, P.A. as "Nelson P.A.", Traci K. Strickland as the "Nelson P.A. Trustee", and V. John Brook, Jr. as the "Nelson Trustee".

Those attending the hearing agreed that they would submit stipulated facts. Mrs. Nelson presented a Memorandum Re Contracts dated February 14, 1996, prepared by Nelson. Nelson has submitted a Petitioner's Response to Hearing. The Court has considered these items and the bankruptcy case files of Nelson and Nelson P.A.

### Background

Prior to June 21, 1995, Nelson was a lawyer admitted to practice law in Florida. His law practice was principally a plaintiff's personal injury practice. He conducted his law practice through Nelson P.A., a professional corporation. Nelson was the sole officer, director, and shareholder of Nelson P.A.

In early 1995, The Florida Bar began an investigation into the dealings of Nelson and Nelson P.A. As a result of the investigation and pending disciplinary proceedings, Nelson referred his clients to other attorneys.

One of Nelson's clients was Edwin L. Chewning ("Chewning"), who was referred to M & M. In conjunction with the referral of Chewning to M & M, Nelson accepted and agreed to the following provision in a letter dated April 25, 1995, to him from M & M:

> This letter is to confirm our agreement regarding the referral of the case involving your client, Edwin L. Chewning, to this firm. As we discussed, the terms of this referral and *the determination of amount of the fee to be paid to Paul A. Nelson shall be governed by the applicable laws of the State of Florida, the Florida Rules of Professional Conduct and court approval.* The share to be paid to Paul A. Nelson shall be the percentage amount set forth in the "Authority to Represent" or the amount permitted to be paid by the aforementioned laws, rules, and court approval, provided, however, if that amount permitted to be paid is based upon quantum meruit, it shall not exceed the percentage amount set forth in the Authority to Represent.

(Emphasis supplied). Chewning approved this agreement by signing a copy of the letter on May 8, 1995.

On April 25, 1995, and again on May 8, 1995, Chewning signed a document entitled Authority to Represent (the "Chewning Referral Agreement"), retaining M & M to represent his and his daughter's interests in connection with claims resulting from an accident which had occurred in April, 1990. The Chewning Referral Agreement contains a contingent fee agreement in substantially the form provided by Rule 4–1.5(f)(4)(B) of the Rules Regulating The Florida Bar, and provides that M & M will receive a fee to be paid from the proceeds of any recovery. Additionally, the Chewning Referral Agreement contains a fee division agreement providing that Nelson will receive a portion of the contingent fee:

> I [Chewning] understand that Paul A. Nelson has referred this matter to Merkle & Magri, P.A. and will be receiving 35 percent of the attorney's fee as set forth below. I further understand that I will only owe one attorney's fee as set forth below and that it will be the responsibility of the law firm of Merkle & Magri, P.A. to compensate referring counsel.

This arrangement for the division of legal fees between M & M and Nelson was approved by the United States District Court on September 11, 1995, in the *Chewning* case.[1]

Nelson referred at least 42 clients to attorneys. These referrals were accompanied by referral agreements ("Referral Agreements") which contained contingent fee agreements and fee division agreements substantially similar to the agreements between M & M, Nelson, and Chewning. The attorneys to whom the clients were referred, and the percentage of the contingent fees to be received by Nelson, are:

| Percentage to Nelson | Scott T. Johni, P.A. | M & M | William F. Merlin, Jr. |
|---|---|---|---|
| 10% | 3 | | |
| 25% | 2 | | 3 |
| 35% | 6 | 7 | |
| 50% | 5 | | |
| 95% | 1 | | |
| 50%–35% | 13 | | |
| 90%–45% | | 1 | |
| 90%–50% | | 1 | |

Practically all of the Referral Agreements were signed in late April, 1995. All of the Referral Agreements state that Nelson is the referring attorney and will be receiving a percentage of the fee. Nelson states that the clients referred were clients of Nelson P.A., and that he signed the Referral Agreements as an employee of Nelson P.A.

On May 12, 1995, Nelson filed a voluntary petition for relief pursuant to Chapter 7 of the Bankruptcy Code. Nelson did not schedule or refer to the fees, the agreements for the division of legal fees, the Referral Agreements, the letter agreement with M & M and Chewning, or the Chewning Referral Agreement in the schedules of assets or executory contracts, or in the statement of financial affairs filed with his petition.

Also on May 12, 1995, Nelson P.A. filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Nelson P.A. did not schedule or refer to the fees, the agreements for the division of legal fees, the Referral Agreements, the letter agreement between Nelson, M & M, and Chewning, or the Chewning Referral Agreement in the schedules of assets or executory contracts, or in the statement of financial affairs filed with its petition.

Nelson P.A. continued to operate as a Chapter 11 debtor in possession. Nelson's suspension or disbarment was imminent. Nelson P.A. did not accept any new clients. Nelson P.A. anticipated a liquidating Chapter 11, assisting with the transition of its existing clients to new attorneys, and receiving the legal fees under the fee division provisions of the Referral Agreements when the claims were resolved. Some of the claims of the referred clients were concluded during this time, and the referral fees were paid to Nelson P.A.

On June 21, 1995, the Supreme Court of Florida granted The Florida Bar's Petition for Emergency Suspension, and suspended Nelson from the practice of law. The order on the petition provides that: " ... the respondent is suspended immediately from the

---

1. *Lindsey Chewning, a minor, by and through her parents and next friends, Edwin and Barbara Chewning v. Honda Motor Co., Ltd., and American Honda Motor Co., Inc.,* Case No. 94–676–CIV–T–25(A), United States District Court, Middle District of Florida.

practice of law ..." and that Nelson is "[t]o be granted no close-out period, as he has already been permitted a thirty (30) day close-out period...."

On August 1, 1995, the Chapter 11 case of Nelson P.A. was converted to a Chapter 7. On August 18, 1995, pursuant to the Order Converting Case to Chapter 7, Nelson P.A. filed a document entitled "Current Inventory". The Current Inventory of Nelson P.A. included the following:

> Approx. forty fee split contracts which call for referral fees as well as assistance and consultation for which fees will be devided (sic) upon successful completion of each case, either through suit or settlement. Any amount of money assumed as a value for these fee splits would be speculative, at best (Attachment "D").

Attachment "D" to the Current Inventory consisted of copies of the Referral Agreements, including the Referral Agreement signed by Chewning on April 25, 1995.

On October 12, 1995, the Supreme Court of Florida granted Nelson's uncontested petition to resign in lieu of disciplinary proceedings, with leave to seek readmission after five years.

There has been no motion in the Nelson P.A. bankruptcy case which requests the Court to authorize the Nelson P.A. Trustee to abandon any interest which the Nelson P.A. bankruptcy estate may have in the referral fees.

There has been no motion in the Nelson bankruptcy case which requests the Court to authorize the Nelson Trustee to abandon any interest which the Nelson bankruptcy estate may have in the referral fees.

On January 3, 1996, the Circuit Court of the Thirteenth Judicial Circuit of the State of Florida, in and for Hillsborough County, Criminal Justice Division, entered an Order on Restitution in the case of *State of Florida vs. Paul Nelson,* Case No.: 95–8568, providing:

> Fifty percent (50%) of all funds that are received for, *by or on behalf of Paul A. Nelson* as a result of cases that he referred out to other attorneys shall be turned over to the Department of Corrections, Probation Department, to pay restitution for the victims in the above case. The remaining fifty percent (50%) of those monies shall be retained by Paul A. Nelson and/or his wife.

(Emphasis supplied). Neither the Nelson Trustee nor the Nelson P.A. Trustee received notice of the hearing which resulted in the Order on Restitution.

The *Chewning* case has settled and the United States District Court approved payment of the referral fee in the amount of $22,127.88.[2]

On July 3, 1996, M & M filed the "Emergency Motion to Have Court Determine Where Funds Should be Paid" requesting this Court to enter an order directing where and to whom the fees should be sent.

 Nelson has filed a Request to be Allowed to Respond to the Evidentiary Hearing, requesting the Court to consider his response to the arguments and allegations relating to the contracts, together with a Petitioner's Response to Hearing, setting out his positions on (1) the validity of the contracts, and (2) the executory nature of the contracts. Since Nelson might have an interest in fees which are not the property of either the Nelson or the Nelson P.A. bankruptcy estate, the Court grants Nelson's Request to be Allowed to Respond to the Evidentiary Hearing, and considers his Petitioner's Response to Hearing.

Mrs. Nelson asserts that Nelson has a claim to the fees because (1) the fees are post petition earnings, (2) the fees are the result of an executory contract deemed rejected by the Nelson P.A. Trustee, and (3) the Order on Restitution requires that the fees be turned over to Nelson. Mrs. Nelson also read a document entitled Memorandum Re Contracts, dated February 14, 1996, which she indicates was prepared by Nelson. Mrs. Nelson is not a lawyer and therefore cannot

---

**2.** The Court notes that Rules 4–1.5(f)(4)(D) and 4–1.5(g) of the Rules Regulating The Florida Bar relate to the division of fees among attorneys. Since the District Court has approved the agreement for the division of fees and the amount of the fees to be paid to Nelson in the *Chewning* case, this Court need not and should not address these considerations.

represent Nelson or Nelson P.A. However, since fees which are not the property of either the Nelson or the Nelson P.A. bankruptcy estate might be payable to some extent "to Nelson and/or his wife" pursuant to the Order of Restitution, the Court also considers the comments of Mrs. Nelson.

## Discussion

### The Interests of Nelson and Nelson P.A.

[2] Although the Chewning Referral Agreement is an agreement signed by M & M, Chewning, and Nelson, Nelson states that the clients referred by the Referral Agreements were "clients of the P.A.", that he located other attorneys or firms who would assume "Paul A. Nelson P.A.'s client representation", and that "[t]he contracts were signed by Paul A. Nelson in his then current capacity as an employee of the firm." Nelson was the sole officer, director, and shareholder of Nelson P.A. Nelson states that "(s)ince the aforementioned contracts were assets of the P.A., they were not listed in Paul A. Nelson's personal bankruptcy." Although Nelson individually filed a Chapter 7 petition, Nelson P.A. filed a Chapter 11 petition for the purpose of discharging obligations under the Referral Agreements and receiving the referral fees. Nelson states that it was anticipated that this would be a liquidating Chapter 11. Nelson states that "(w)hile the P.A. functioned in Chapter 11, any settlements of these contracts were placed into the approved corporate bankruptcy accounts and all distributions appropriately recorded." When the Chapter 11 case was converted to a Chapter 7 case, the Referral Agreements were listed as assets of Nelson P.A.

In summary, the clients referred were clients of Nelson P.A., Nelson entered the Referral Agreements as an employee of Nelson P.A., Nelson discharged responsibilities under the Referral Agreements on behalf of Nelson P.A., legal fees paid while the Chapter 11 case was pending were paid to Nelson P.A., and Nelson (the sole officer and director of Nelson P.A.) inventoried the Referral Agreements as assets of Nelson P.A. Accordingly, whatever fee is due pursuant to the Chewning Referral Agreement for legal services performed or legal responsibility assumed prior to the petitions or during the pendency of the Nelson P.A. Chapter 11 case is due to Nelson P.A.

### The Referral Agreements

■ Nelson asserts that the trustees do not have standing to 'make arguments relating to the Referral Agreements. The Court disagrees. The bankruptcy estates are substantially affected by this motion, and the trustees clearly have standing to participate.

■ Nelson also claims that the Referral Agreements are nonassumable executory contracts, and are not assets of the Nelson P.A. bankruptcy estate, relying on the case of *Turner v. Avery*, 947 F.2d 772 (5th Cir. 1991). Nelson is correct in his assertion that the *Turner* court held that contingent fee contracts are nonassumable executory contracts which do not become part of a Chapter 7 bankruptcy estate. However, the *Turner* court also held that contingent fee contracts have value to the bankruptcy estate:

> The contingent fee contracts in the case at bar were executory because Avery was required to perform services after the bankruptcy petition was filed. Because the contracts were nonassumable as a matter of law they did not form a part of the bankruptcy estate. *But it does not follow that the contingent fee contracts had no value to the law partnership as of the date Avery filed for Chapter 7 protection. To the contrary, the contracts on cases subsequently settled or successfully litigated did have a value on that date. That value is determinable on a quantum meruit basis by measuring the value and worth of the legal services performed both before and after the bankruptcy filing.*

*Id.* at 774. (Emphasis supplied).

Accordingly, the contingent fee provision contained in the Chewning Referral Agreement has value to the bankruptcy estate. The value is determinable on a quantum meruit basis.

The fee division provision contained in the Chewning Referral Agreement also has value to the bankruptcy estate, and that value is also determinable on a quantum meruit basis.

■ The payment of a referral fee to an attorney is made on a quantum meruit basis. *See Professional Ethics of The Florida Bar Opinion 90–3,* July 15, 1990. Under the former Code of Professional Responsibility, referral fees were not authorized, and the only permissible way in which attorneys not in the same firm could share a legal fee was in proportion to the work performed by each attorney. *Id.* This long-standing absolute prohibition on referral fees was modified in 1987, when the Rules Regulating The Florida Bar became effective. *Id.* Rule 4–1.5(g) now permits attorneys not in the same firm to divide legal fees either: (1) in proportion to the work performed by each; or (2) pursuant to a written agreement, signed by the client and all attorneys who are to participate in the fee, that sets forth the manner in which the fee is to be divided and provides that each attorney will assume joint legal responsibility for the representation and be available for consultation with the client. Additionally, Rule 4–1.5(f)(4)(D) permits lawyers not in the same firm to divide a contingent fee, with the lawyer assuming secondary responsibility for the legal services receiving a maximum of 25%. If the lawyers accept substantially equal active participation in the provision of legal services, counsel may apply for court authorization of a fee division in excess of 25%. Accordingly, the entitlement of an attorney to a referral fee, even a referral fee based on a contingent fee agreement, is based on a quantum meruit analysis.

When an attorney has been suspended or disbarred, the analysis is made of the work performed or the responsibility assumed and availability for consultation prior to suspension or disbarment.

> ... [I]t is ethically permissible for an attorney to pay, pursuant to a properly executed fee-division agreement, a suspended or disbarred referring attorney for the responsibility that the attorney did assume and the time that he or she was available

for consultation *prior to* suspension or disbarment.

*Id.* (Emphasis in original).

■ Since referral fees are payable only for services performed or responsibilities assumed and availability for consultation prior to suspension or disbarment, the referral fees payable under the Chewning Referral Agreement can be payable only for services performed or responsibilities assumed prior to Nelson's suspension.

Nelson asserts that he should receive part of the referral fee because he assisted with the case after his suspension and after conversion of the Nelson P.A. case from a Chapter 11 case to a Chapter 7 case. However, Rule 3–5.1(e) of the Rules Regulating The Florida Bar provides that during suspension, "the respondent shall continue to be a member of The Florida Bar but without the privilege of practicing...." Additionally, Rule 3.5–2(c) provides that an order of emergency suspension shall "unless otherwise ordered" permit the attorney to continue to represent existing clients for only the first 30 days after issuance of such emergency order. In Nelson's case, the Florida Supreme Court ordered that Nelson was suspended immediately from the practice of law, and he was granted no close out period since he had already been permitted a 30 day close-out period. The referral fee is a legal fee, a division of the legal fee due for the Chewning representation. Since Nelson was suspended from the practice of law effective June 21, 1995, whatever legal fee is due pursuant to the Chewning Referral Agreement must have been earned prior to June 21, 1995.[3]

■ Nelson asserts that since the Referral Agreements were not assumed by the Nelson P.A. Trustee, the Referral Agreements were abandoned. This assertion is incorrect, as held by *Turner, supra.* The rejection of executory contracts and the abandonment of property of the estate are different concepts under the Bankruptcy Code. Under the *Turner* analysis, an executory contingent fee

3. Nelson performed substantial services for the client prior to being suspended from the practice of law, since the accident occurred several years prior to the referral, the lawsuit was apparently filed in 1994, and the referral to M & M was made shortly before Nelson was suspended from the practice of law. This referral was not like the usual referral which takes place in the early stages of a representation.

agreement, although not assumable, had value to the bankruptcy estate. Similarly, the Chewning Referral Agreement has value to the bankruptcy estate, and that value is property of the estate.[4] Property of the estate cannot be abandoned without notice and a hearing. 11 U.S.C. § 554.

■ The *Turner* analysis is confirmed by examining the elements of the Bankruptcy Code. When the Nelson P.A. Chapter 11 case was filed, the Chewning Referral Agreement was an executory contract. Executory contracts for personal services are generally not assumable without the consent of the other parties to the contract. 11 U.S.C. § 554(c). While the Nelson P.A. case was a Chapter 11 case and Nelson P.A. was a debtor in possession, Nelson P.A. performed services under the contract, and could assume or reject executory contracts at any time before the confirmation of a plan. 11 U.S.C. § 365(d)(2). The case was converted to a case under Chapter 7, and that conversion constitutes an order for relief under Chapter 7. 11 U.S.C. § 348(a). After the order for relief under Chapter 7, the Nelson P.A. Trustee had 60 days to assume or reject executory contracts. 11 U.S.C. § 365(d)(1). Since Nelson P.A. had performed all of the legal duties it could perform because of Nelson's suspension, the Referral Agreement may not have been an executory contract at the time the case was converted. If the Referral Agreement was an executory contract, the contract was deemed rejected. 11 U.S.C. § 365(c) and § 365(d). The rejection of an executory contract which has not been assumed constitutes the breach of such contract immediately before the date of the filing of the petition. 11 U.S.C. § 365(g). The breach of a contract for legal services entitles the firm which provided the legal services to compensation for the value of the legal services provided, on a quantum meruit basis. The value of the legal services as of the date of the petition is an asset of the estate. 11 U.S.C. § 541(a)(1). The value of the legal services provided during the pendency of the Chapter 11 case is also an asset of the estate. 11 U.S.C. § 541(a)(7). Accordingly, if the

contract was an executory contract at the time of conversion, the contract had value, the value is determined on a quantum meruit basis, and the value is property of the bankruptcy estate. Property of the estate may be abandoned only after notice and a hearing, 11 U.S.C. § 554, and the Nelson P.A. Trustee has not abandoned this property.

The Nelson P.A. Trustee asserts that the Referral Agreements were not executory contracts at the time the case was converted, since there were no further legal services which could be rendered or legal responsibilities which could be assumed by Nelson or Nelson P.A. She asserts that the bankruptcy estate would be entitled to the referral fee if the contingent fee became payable, as a receivable.

In this case, since all of the duties which could be performed by Nelson or Nelson P.A. under the Chewning Referral Agreement had been performed, the result reached if the contract is considered an executory contract is the same as the result reached if the contract is not considered an executory contract.

M & M indicates that the *Turner* case states that a contingent fee is not earned until a case is concluded and the fee paid. *Turner* does not stand for that proposition, however. In *Turner*, the contingent fee case was not concluded and the fee was not paid until after the bankruptcy was filed. The *Turner* court concluded in that circumstance that the contingent fee contract did, in fact, have value to the bankruptcy estate, and that value was determinable on a quantum meruit basis.

■ Accordingly, whatever referral fee is to be paid under the Chewning Referral Agreement was earned entirely prior to June 21, 1995, is property of the Nelson P.A. bankruptcy estate, and has not been abandoned by the Nelson P.A. Trustee.

### The Order on Restitution

■ Finally, the Court must consider the effect of the Order on Restitution. This order was entered postpetition by the State

---

**4.** The estate is comprised of all legal or equitable interests of the debtor in property, wherever located, as of the commencement of the case. 11 U.S.C. § 541.

court without notice to either the Nelson Trustee or the Nelson P.A. Trustee.

■ Bankruptcy is available as relief to financially pressed debtors, and not as a shelter from the consequences of criminal acts. 2 Lawrence P. King, *Collier On Bankruptcy* § 362.05[1] 1996. Section 362(b)(1) of the Bankruptcy Code provides that the filing of a petition does not operate as a stay of the commencement or continuation of a criminal action against a debtor. Section 362(b)(4) provides that the stay of § 362(a)(1) does not stay an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power. Section 362(b)(5) provides that the stay of § 362(a)(2) does not stay the enforcement of a judgment, other than a money judgment, obtained in an action or proceeding to enforce such governmental unit's police or regulatory power.

However, the drafting of the exceptions to the various stays of § 362(a) is precise and intentional, and must be carefully considered in light of the inclusive nature of § 362(a). *Id.* Although § 362(b)(4) allows a governmental unit to proceed to enforce its regulatory power in spite of § 362(a)(1), Congress left the automatic stay in effect in other subsections of § 362(a) to preclude the collection of a fine which is thereafter imposed by that governmental unit against property of the estate. *Id.* Section 362(a)(3) stays any act to exercise control over property of the estate, and § 362(a)(6) stays any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

> While injunction, civil penalties, and costs may be sought without conflict with the Bankruptcy Code, "restitution" to obtain financial redress for certain people may not.

> "Any state court ordering restitution for certain citizens from the debtor is certainly creating for these few citizens an advantage over other potential creditors of this debtor's estate."

*In re Liss,* 59 B.R. 556, 561 (Bankr.N.D.Ill. 1986), citing *In re Charter First Mortgage Inc.,* 42 B.R. 380, 385 (Bankr.Or.1984).

■ Further, since the referral fee is property of the Nelson P.A. bankruptcy estate, restitution payments to be made by Nelson individually cannot be assessed against this property.

Accordingly, restitution cannot be assessed postpetition against property of either the Nelson or the Nelson P.A. bankruptcy estate. Such an act to exercise control over property of the estate is in violation of § 362(a)(3), and an act in violation of the automatic stay is void. *Borg–Warner Acceptance Corporation v. Hall,* 685 F.2d 1306 (11th Cir.1982); *see, also, In re Servico, Inc.,* 144 B.R. 933, 936–37 (Bankr.S.D.Fla.1992). Property of the estate must be collected by the trustee, 11 U.S.C. § 704(1), and distributed as provided by law. 11 U.S.C. § 726.

### Conclusion

For the reasons expressed above, the Court concludes that Chewning had been a client of Nelson P.A., that Nelson entered the Chewning Referral Agreement as an employee of Nelson P.A., that prior to and during the Nelson P.A. Chapter 11 case Nelson performed legal services and assumed legal responsibilities on behalf of Nelson P.A., that all of the legal services which could be performed and all of the legal responsibilities which could be assumed under the fee division provisions of the Chewning Referral Agreement were performed or assumed prior to June 21, 1995, and that the legal fee due under the fee division provisions of the Chewning Referral Agreement is property of the Nelson P.A. bankruptcy estate. The Nelson P.A. Trustee has not abandoned this property, and the legal fee should be paid to the Nelson P.A. Trustee.

Criminal restitution cannot be assessed postpetition against property of the Nelson P.A. bankruptcy estate or the Nelson bankruptcy estate.

The legal fee now being held by M & M pursuant to fee division provisions of the Chewning Referral Agreement and authorized by the U.S. District Court, should be paid to the Nelson P.A. Trustee.

Therefore,

**IT IS ORDERED** that Merkle & Magri, P.A., shall pay to Traci K. Strickland, as

Chapter 7 Trustee of the bankruptcy case of Paul A. Nelson, P.A., the referral fee which it has been authorized to pay by the U.S. District Court in the case of *Lindsey Chewning, etc. v. Honda Motor Co., Ltd., et al.*, Case No. 94–676–CIV–T–25(A), United States District Court, Middle District of Florida.